COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Frank and Powell
Argued at Chesapeake, Virginia


CHRISTOPHER JOHN DUVA

                                                      OPINION BY
v.       Record No. 0179-09-1                 JUDGE ROBERT P. FRANK
                                                      DECEMBER 8, 2009

KAREN DENISE DUVA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
William R. O'Brien, Judge

Kim M. Mattingly (John H. Kitzmann; Davidson & Kitzmann,
P.L.C., on briefs), for appellant.

Robert Jeffries (Law Offices of Diane Fener, P.C., on brief), for
appellee.


        Christopher J. Duva, appellant (husband), contends the trial court erred in:  (1) refusing to

consider any evidence of a change in circumstances relating to visitation and the best interests of the

children; (2) classifying a house in Rhode Island as marital property rather than as hybrid or

separate property; (3) ordering husband to pay wife spousal support for an unlimited duration; and

(4) failing to give husband a credit for payoff of a marital debt and/or failing to equitably apportion

marital debt.  For the reasons stated, we affirm in part, reverse in part, and remand.

                                  BACKGROUND

        The parties were married on October 22, 1995 and have two minor children.  For most of

the marriage husband was employed as a Navy SEAL, earning approximately $45,000 per year.

After retiring due to health problems, husband worked for a defense contractor for just over a year.

Husband currently works in Rhode Island in the heating and air conditioning industry.  Wife did not

work outside the home for the first years of the marriage.  From 2001 until the present she has

worked part-time as a teacher earning fourteen dollars an hour. She also cleans houses to supplement her income.

Wife filed for divorce on August 3, 2006. On January 7, 2008 the trial court held a hearing on the issues of divorce, custody, visitation, equitable distribution, and spousal support. Prior to the hearing, the parties agreed to joint legal custody of the minor children, with physical custody to the wife. The parties also agreed to supervised visitation to husband until such time as the guardian *ad litem* felt that unsupervised visitation would be appropriate. This visitation agreement was never memorialized in a decree.

The trial court issued a written opinion letter on August 21, 2008 that addressed equitable distribution and spousal support, but not visitation. On October 28, 2008, the court conducted a hearing on the entry of the final decree and at that time husband requested a modification of the visitation ruling. The court declined to modify its ruling, and husband filed a motion to reconsider addressing various issues, including visitation. On December 1, 2008 the court issued a second opinion letter granting an award of spousal support to the wife, declining to change the visitation arrangements, and entering an order for equitable distribution of the parties' assets.

This appeal follows.

## ANALYSIS

### Visitation

At the October 28 hearing, husband asked the court for a ruling on visitation, namely, that the court amend the visitation from supervised to unsupervised. The court noted that it had previously left that decision to the guardian *ad litem* and declined to change that ruling. Husband then requested that the court revise the visitation schedule in his motion to reconsider. In its second opinion letter, the court stated that "[t]o the extent the motion seeks different visitation terms, [husband] has not argued any reason the terms should change. Furthermore, [husband] is also

arguing that wife has not complied with the Court's therapy order but that is an issue for a show cause hearing, not a motion for reconsideration."

Husband argues on appeal that wife's refusal to take the children to therapy violated the terms of the oral agreement and, thus, constituted a change of circumstances which the trial court failed to consider in continuing supervised visitation to husband. Wife responds that husband did not show a change of circumstances; he simply reiterated that he was unhappy with the agreement as it currently stood.

Husband's question presented is premised on the belief that the trial court refused to consider evidence of a change in circumstances. At the October 28, 2008 hearing, husband proffered only that wife violated the agreement as to taking the children to therapy. In his motion to reconsider, he again argued only that wife was in violation of the agreement because she took the children to only thirteen therapy sessions. In its December 1, 2008 opinion letter, however, the trial court concluded that husband did not argue any reason why the terms of visitation should change.

When determining whether to change visitation, a trial court "must apply a two-pronged test: (1) whether there has been a change in circumstances since the most recent [visitation] award; and (2) whether a change in [visitation] would be in the best interests of the child." Visikides v. Derr, 3 Va. App. 69, 70, 348 S.E.2d 40, 41 (1986) (discussing this test in the context of custody determinations). "In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990). "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Id. at 328, 387 S.E.2d at 795. "A trial court's determination of matters within its

discretion is reversible on appeal only for an abuse of that discretion, . . . and a trial court's decision will not be set aside unless plainly wrong or without evidence to support it." Id.

The trial court concluded that husband did not articulate any material reason the visitation must change. Thus, the trial court did consider husband's argument that the circumstances had changed, and rejected it. We note that husband did not proffer why thirteen therapy sessions was a material change in circumstances, that the number of sessions violated the agreement, nor that the best interests of the children would be furthered by unsupervised visitation. Based upon our standard of review, we do not find that the trial court abused its discretion in not changing the visitation arrangements.

Rhode Island Property

Husband contends the trial court erred in classifying the Rhode Island property as marital. Specifically, he argues that the trial court applied the wrong standard in determining that the Rhode Island property (separate property) was transmuted into marital property because the Rhode Island mortgage was paid by marital funds.

Husband purchased the property in May 1995, five months prior to the parties' marriage. He paid $81,200, and financed the entire purchase price. He titled the property solely in his name, and it remained so throughout the marriage. Husband alone made the first five mortgage payments, but the record does not disclose whether any equity was accumulated during that period.

The parties lived in that property for approximately one year and then moved to Panama. They leased the property, and the rental income was deposited into a joint account for the sole purpose of receiving the rental income. The rent proceeds were then transferred to a joint account with Navy Federal Credit Union. Husband also deposited his Navy paycheck into the Navy Federal Credit Union account, and the parties' joint debts were paid from that account.

After the marriage, the Navy Federal Credit Union account paid all of the mortgage payments. Because the rental income was never adequate to fully pay the mortgage, marital funds from the Navy Federal Credit Union account were used to supplement the rental income to pay the mortgage. The property was refinanced several times, but wife never had any liability on any of the notes.

In its August 21, 2008 opinion letter, the trial court classified the property as marital. In response to husband's motion to reconsider, alleging the court did not properly classify the property, the trial court clarified its earlier ruling in an opinion letter dated December 1, 2008, which stated in part:

> The simple fact the property was acquired before marriage does not overcome the Court's finding that the bulk of the mortgage was paid with marital funds. Separate property may become marital property by the act of commingling which is what was found to occur in this case. See Va. Code § 20-107.3(A)(3)(d) (2008).

The trial court found that the property's mortgage was paid from marital funds, i.e., that the marital funds were commingled with the separate property. The court concluded that the Rhode Island property was transmuted to marital property. This analysis did not address tracing the commingled funds or hybrid property.

Code § 20-107.3(A) requires that the circuit court determine "the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property." The trial court's classification of property as marital or separate is a factual finding. Therefore, that classification will be reversed on appeal only if it is "'plainly wrong or without evidence to support it.'" Ranney v. Ranney, 45 Va. App. 17, 31-32, 608 S.E.2d 485, 492 (2005) (quoting McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994)).

Marital property is all property titled in the names of both parties and all other property acquired by each party during the marriage which is not separate property, i.e., property received during the marriage by bequest, devise, descent, survivorship or gift from someone other than the spouse. See Code § 20-107.3(A)(2). "All property . . . acquired by either spouse during the marriage, and before the last separation of the parties . . . is presumed to be marital property in the absence of satisfactory evidence that it is separate property." Id.

Code § 20-107.3(A)(3)(d) defines "hybrid property":

> The court shall classify property as part marital property and part separate property as follows:
>
> When marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, such contributed property shall retain its original classification.

Under Code § 20-107.3(A)(3)(d), the marital funds, by paying the mortgage on the separate property, were commingled with the Rhode Island property (the receiving property) and were transmuted into the separate property. The burden would then be on the wife to trace the contribution for the marital funds to retain the classification of marital property.

Moran v. Moran, 29 Va. App. 408, 512 S.E.2d 834 (1999), controls. Mrs. Moran purchased the property prior to the marriage, but during the marriage, marital funds were expended to pay the mortgage payments. 29 Va. App. at 412, 512 S.E.2d at 835. Husband claimed that the infusion of marital property for mortgage payments transmuted the separate property to a hybrid classification. Id. at 412, 512 S.E.2d at 836. We rejected that argument, holding:

> The evidence showed that the Morans used marital funds to pay the monthly mortgage obligation for the Berkshire house. Thus,

> they commingled marital funds with separate property, resulting in the presumption that the marital funds were transmuted to separate property. However, to the extent the marital funds reduced the principal of the mortgage, that amount is traceable from the separately acquired equity. See Hart [v. Hart], 27 Va. App. [46,] 65, 497 S.E.2d [496,] 505 [(1998)](stating that the Brandenberg formula for determining marital contribution includes amount of marital funds expended in the reduction of mortgage principal).

Id. at 413-14, 512 S.E.2d at 836. Thus, we found husband did trace the marital funds used to pay the mortgage and concluded the trial court did not err in finding the property to be "hybrid." Id. at 414, 512 S.E.2d at 837.

Here, the trial court did not consider marital funds losing its classification as marital property when commingled with the receiving property. It did not consider whether wife traced the marital funds.[1] Thus, the trial court applied the incorrect standard in determining whether the property is separate, marital, or hybrid. In that respect, we find the trial court erred. "As the Supreme Court has recognized, a trial court '"by definition abuses its discretion when it makes an error of law."' Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)). Because the court erred, we remand for the court to revisit its equitable distribution award.

In her brief, wife rejects husband's transmutation argument under Moran and Code § 20-107.3(A)(3)(d). She contends that since husband never "acquired" the Rhode Island property until after the marriage, it was never separate property and, therefore, the marital funds used to pay the mortgage could not be transmuted into separate property.

She contends that when husband purchased the property prior to the marriage, he had no equity in the property. Therefore, the property was not "acquired" prior to the marriage. All of

---

[1] Husband did not argue that he traced the separate rental income when it was commingled with the marital account with the Navy Federal Credit Union. Therefore, we do not address whether the Navy Federal Credit Union account is hybrid property.

- 7 -

the equity, she says, was accumulated after the marriage. She reasons that the uncontroverted evidence is that husband made five mortgage payments prior to the marriage, but he was unable to recall how much equity was accrued during those five months. All other mortgage payments were paid from marital funds.

Wife cites <u>Moran</u> for the concept that taking title is not "acquisition" under Code § 20-107.3(A)(1)(i).

> The "acquisition" of property refers to the process of purchasing and paying for property. <u>See</u> Brett R. Turner, <u>Virginia's Equitable Distribution Law: Active Appreciation and the Source of Funds Rule</u>, 47 Wash & Lee L. Rev. 879, 899-905 (1990) ("property is 'acquired' under the source of funds rule whenever real economic value is created") (citing <u>Harper v. Harper</u>, 448 A.2d 916, 929 (Md. 1982); <u>Wade v. Wade</u>, 325 S.E.2d 260 (N.C. Ct. App. 1985)).[2]

29 Va. App. at 414, 512 S.E.2d at 836.

In <u>Moran</u>, the wife purchased a home prior to the marriage, and by virtue of her mortgage payments, she accumulated equity between $2,900 and $3,900 at the time of the marriage. <u>Id.</u> at 411, 512 S.E.2d at 835. Even under the source of funds rule, Ms. Moran had, herself, created economic value prior to the marriage. Thus, the comments concerning "the process of purchasing and paying for property" are not essential to the decision in <u>Moran</u>. We conclude, therefore, that the basis of wife's argument here is dicta which does not bind our decision in this case. <u>See</u> <u>Newman v. Newman</u>, 42 Va. App. 557, 565, 593 S.E.2d 533, 537 (2004) (*en banc*) ("Dicta in a prior decision generally refers to that portion of an opinion 'not essential' to the disposition in the case." (quoting <u>Central Green Co. v. United States</u>, 531 U.S. 425, 431 (2001))).

The Virginia Supreme Court addressed the source of funds doctrine in <u>Smoot v. Smoot</u>, 233 Va. 435, 357 S.E.2d 728 (1987), and rejected it. <u>See also</u> <u>Marion v. Marion</u>, 11 Va. App.

---

[2] The law review article was written after the July 1, 1990 amendment to Code § 20-107.3 adding "hybrid property" as a classification.

659, 401 S.E.2d 432 (1991). The Court concluded that because (at that time) Code § 20-107.3 only contemplated two kinds of property, marital or separate, the statute did not recognize hybrid property.[3] The Court distinguished a Maryland case, Harper v. Harper, 448 A.2d 916 (Md. 1982), which applied the source of funds rule, because Maryland's statute recognized hybrid property.

Harper defined "source of funds" as:

> Under [the source of funds] theory, when property is acquired by an expenditure of both nonmarital and marital property, the property is characterized as part nonmarital and part marital. Thus, a spouse contributing nonmarital property is entitled to an interest in the property in the ratio of the nonmarital investment to the total nonmarital and marital investment in the property. The remaining property is characterized as marital property and its value is subject to equitable distribution.

448 A.2d at 929.

Clearly, the source of funds rule is a vehicle to determine whether property has been transmuted into hybrid property. See Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990) ("It is true that the source of funds is a factor that the court should consider in making an equitable distribution award. Code § 20-107.3(E)(6). The source of funds is a particularly significant factor where funds have been transmuted because of the application of the Smoot rule."). Source of funds does not determine the original classification. If it did, there would have been no need for the Smoot Court to reject the rule. If the rule was not limited to an analysis of hybrid property but the original classification of the property, the Supreme Court of Virginia's rejection of the rule would have been unnecessary.

A reading of Code § 20-107.3(A)(3) clearly supports this position. One acquires property either as separate or marital. We begin with the premise that "property acquired during the

---

[3] Hybrid property was added to the marital and separate property effective July 1, 1990.

marriage is presumed to be marital and property acquired before marriage is presumed to be separate." Robinson v. Robinson, 46 Va. App. 652, 662, 621 S.E.2d 147, 152 (2005). Any analysis of hybrid property must begin with these presumptions. First, we determine whether the property is separate or marital. Then, we apply Code § 20-107.3(A)(3) to determine what portion of the separate property or marital property is hybrid. If hybrid property is an original classification category, the presumptions would be meaningless. Thus, the concept of hybrid property is relevant only after the initial classification is determined, such as income received from separate property (Code § 20-107.3(A)(3)(a)), commingling of separate and marital property, (Code § 20-107.3(A)(3)(d)), when separate property is retitled in the joint names of the parties, (Code § 20-107.3(A)(3)(f)), or when separate property is commingled into the newly acquired property (Code § 20-107.3(A)(3)(g)).

Wagner v. Wagner, 4 Va. App. 397, 358 S.E.2d 407 (1987), is instructive.[4] In Wagner the trial court ruled that wife's interest in a shopping center acquired from her father was her separate property by virtue of a gift. Id. at 404, 358 S.E.2d at 411. During the marriage, wife purchased the property from her father on October 1, 1976 and executed a promissory note for the full purchase price. Id. at 404, 358 S.E.2d at 410. In December 1976, father forgave payment on the note. Id. The trial court determined that property was a gift by virtue of the debt forgiveness and was therefore wife's separate property. Id.

Wife, on appeal, contended the property was not "acquired" when she obtained title on October 1, 1976, but rather when the note was forgiven in December 1976. Id. at 403, 358 S.E.2d at 410. Because the source of funds used to acquire the property was the note to her

---

[4] Wagner was decided prior to the 1990 amendment to Code § 20-107.3(A). However, because the concept of hybrid property is not material to initial classification, the 1990 amendment to the statute has no effect on the holding of Wagner as it applies to the acquisition issue discussed herein.

father, later forgiven as a gift, she argued unsuccessfully that the property was separate. Id. Husband responded that the property was acquired as marital property on October 1, 1976 when the title vested in wife.

We rejected wife's "acquisition" argument, holding, "The character of property classified pursuant to Code § 20-107.3(A) is initially ascertained as of the date that it is acquired." Id. at 404, 358 S.E.2d at 410. Further, "[t]he fact that [wife's] father later forgave the note . . . did not alter the character of the property on . . . the date it was acquired." Id.

Essentially, wife made the same argument in Wagner that we address here, namely, that the date of acquisition was not the date of titling the property, but rather the date when equity was realized. We rejected that argument in Wagner.

It is clear from Wagner that the acquisition date, as envisioned in Code § 20-107.3, is a date certain, not a "process" as suggested in the law review article referenced in Moran. In the context of the Wagner opinion, acquisition refers to the date title was obtained.

We therefore reject the source of funds rule as an initial classification concept. We further reject wife's argument that the acquisition of equity is the triggering event to determine whether the property was acquired. Under the facts of this case, the date of acquisition is a fixed date and is determined when husband took title to the property.

Citing Code § 20-107.3(A)(3)(a), husband also argues that any income derived from the Rhode Island property and any increase in value of that property remains separate property since wife did not prove that either is attributable to the personal efforts of the wife. We do not address these two arguments for several reasons. First, we have already ruled in husband's favor on the classification issue. See Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (en banc) ("[A]n appellate court decides cases 'on the best and narrowest ground available.'" (quoting Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531

(1991) (Stevens, J., concurring))). Second, the trial court never addressed these issues. Because the record does not show that the trial court ruled on appellant's argument, there is no ruling of the trial court for this Court to review on appeal. Fisher v. Commonwealth, 16 Va. App. 447, 454, 431 S.E.2d 886, 890 (1993). Finally, these two concepts are not relevant to the initial classification of property. Rather, they are factors to be considered in determining whether separate property becomes part separate and part marital. See Cirrito v. Cirrito, 44 Va. App. 287, 605 S.E.2d 268 (2004).

Spousal Support and Code § 20-107.1(E)

Appellant contends the trial court abused its discretion in ordering husband to pay wife spousal support for an unlimited duration.[5]

In Miller v. Cox, 44 Va. App. 674, 607 S.E.2d 126 (2005), this Court summarized the principles applicable:

> In reviewing a spousal support award, we are mindful that the trial court has broad discretion in awarding and fixing the amount of spousal support. Brooks v. Brooks, 27 Va. App. 314, 317, 498 S.E.2d 461, 463 (1998). Accordingly, our review is limited to determining whether the trial court clearly abused its discretion. Gamble v. Gamble, 14 Va. App. 558, 574, 421 S.E.2d 635, 644 (1992). In exercising its discretion, the trial court must consider all the factors enumerated in Code § 20-107.1(E) when fashioning its award, but it is not "required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors." Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986). That being said, the trial court's findings "must have some foundation based on the evidence presented." Id. Where that evidentiary foundation exists and the record discloses that the trial court "has given due consideration to each of the [statutory] factors," we will not disturb its determination as to spousal support on appeal. See Thomasson v. Thomasson, 225 Va.

---

[5] Husband does not make an argument on appeal as to the duration or the amount of the spousal support. Therefore, we address only the trial court's award of support.

- 12 -

394, 398, 302 S.E.2d 63, 66 (1983); see also Gamble, 14 Va. App.
at 574, 421 S.E.2d at 644.

Miller, 44 Va. App. at 679, 607 S.E.2d at 128.

We observe that Code § 20-107.1(E)(8) requires the trial court to consider "[t]he provisions made with regard to the marital property under [Code] § 20-107.3" when making a spousal support determination. As previously noted, we are remanding for the trial court to revisit its equitable distribution analysis and award. Because the trial court cannot decide the issues pertaining to permanent spousal support until the equitable distribution issue is resolved, we reverse and remand the trial court's award of spousal support. Stumbo v. Stumbo, 20 Va. App. 685, 694, 460 S.E.2d 591, 596 (1995); Bacon v. Bacon, 3 Va. App. 484, 491, 351 S.E.2d 37, 41-42 (1986); Code § 20-107.1(E)(8).

## Marital Debt

Husband contends the trial court erred in not allowing him credit for the marital debt paid by funds received from refinancing the Rhode Island property, which he asserts is separate property. Alternatively, he maintains the trial court erred in not apportioning marital debt as is required under Code § 20-107.3(E).[6]

When husband refinanced the Rhode Island property in 2006, he borrowed $150,000. From that sum, he paid the existing mortgage of $44,326, and other debts. Of the $105,674 debt paid (after payment of the $44,326 mortgage), wife only challenged three debts as separate: $9,903 for attorney's fees; $8,731 for post-separation rent, and $6,775 for husband's student loan. The trial court found the attorney's fees and rent debts to be separate and then computed the equitable distribution award as follows:

---

[6] In his question presented, husband does not contest the classification of marital debt.

- 13 -

$250,000 agreed upon value of Rhode Island property, less $150,000 debt payment (including pay-off of existing mortgage for a total equity of $100,000). It then added to the equity the two debts found to be separate totaling $18,634 for a total equity of $118,634. The equity in the Virginia Beach residence was $172,196, a difference of $53,562 in favor of the wife. The trial court then ordered wife to pay husband one-half the difference, $26,781, within ninety days. Title to the Rhode Island property was awarded to the husband, and the Virginia Beach residence was awarded to the wife.

Husband's argument that he is entitled to a credit is premised on his contention that separate property, the proceeds of refinancing the Rhode Island property, paid for marital debt. Therefore, he contends, he is entitled to reimbursement of one-half of the marital debt paid.

In denying husband's motion to reconsider, the trial court wrote in its December 1, 2008 opinion letter:

> Defendant seeks additional contribution from wife for the portion of marital debt that he paid from the refinancing of the house, which he still claims, is his separate property. If the court held the Rhode Island home was husband's separate property, there might be a basis for this claim. However, the court already ruled the Rhode Island house was marital property and defendant has not presented a compelling argument to alter that finding. Therefore, since the marital debt was paid with marital property and the parties received an equitable distribution of the remaining marital property, defendant's motion for reconsideration of this issue is also baseless.

Pursuant to Code § 20-107.3(A), a court dissolving a marriage, "upon request of either party, shall determine the legal title as between the parties, and the ownership and value of all property" and shall classify that property as separate property, marital property, or part separate and part marital property. "The court shall also have the authority to apportion and order the payment of the debts of the parties, or either of them, that are incurred prior to the dissolution of the marriage, based upon the factors listed in subsection E." Code § 20-107.3(C).

- 14 -

Here, because the trial court premised its resolution of the marital debt on the Rhode Island property being marital property, and we remand for a proper determination of the classification of that property pursuant to Code § 20-107.3(A), we likewise remand the apportionment of debt. After determining the classification of the Rhode Island property, the trial court must then apportion the marital debt and determine whether husband is entitled to any reimbursement, if separate property paid marital debt. See Ellington v. Ellington, 8 Va. App. 48, 56, 378 S.E.2d 626, 631 (1989) ("contribution of separate assets to the marital net worth is a factor which may result in a particularly identified credit . . .").

Attorney's Fees

Wife asks for an award of attorney's fees and costs to defend this appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

Upon reviewing the record and the briefs submitted, we conclude husband's contentions are not frivolous since he prevailed in part. Gottlieb v. Gottlieb, 19 Va. App. 77, 95, 448 S.E.2d 666, 677 (1994).

CONCLUSION

For the foregoing reasons, we find the trial court properly declined to find a material change in circumstances and did not err in refusing to modify husband's visitation. In finding that the court misapplied the law in making an equitable distribution award, we remand for the court to make an award based on the record before it. Because the awards of spousal support and marital debt are dependent upon the equitable distribution analysis and award as it applies to the Rhode Island property, we also remand those issues to the trial court. Further, we decline to

award attorney's fees on appeal.  Accordingly, the trial court is affirmed in part and reversed in part.

Affirmed in part,
reversed in part,
and remanded.